**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 06-4167**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

PETER F. BLACKMAN,

Defendant - Appellant.

---

Appeal from the United States District Court for the Western District of Virginia, at Charlottesville. Norman K. Moon, District Judge. (3:04-cv-00046-nkm)

---

Argued: February 2, 2007          Decided: May 31, 2007

---

Before WILKINS, Chief Judge, and SHEDD and DUNCAN, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** James Herr Rodio, HOLLAND & KNIGHT, L.L.P., McLean, Virginia, for Appellant. William Frederick Gould, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlottesville, Virginia, for Appellee. **ON BRIEF:** David S. Black, HOLLAND & KNIGHT, L.L.P., McLean, Virginia, for Appellant. John L. Brownlee, United States Attorney, Roanoke, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Peter F. Blackman appeals his conviction for misdemeanor criminal contempt. Finding no error, we affirm.

I.

In 2002, Blackman purchased Eastern View Farm, a historic manor house located on a 250-acre site in Louisa County, Virginia. When he purchased the property, Blackman envisioned substantially remodeling and enlarging the house. Because the entire property was subject to a preservation easement monitored by the National Park Service (NPS or Government), Blackman submitted three drafts of renovation plans detailing his proposed changes to the house. The renovation plans called for removing the existing front porch, raising the kitchen porch roof, adding windows, replacing the siding, and enlarging the basement. Blackman also wanted to alter the footprint of the home from a "T-plan" to an "H-shaped plan" by constructing a "south addition" and a sun room. The NPS rejected all three sets of renovation plans submitted by Blackman.

Blackman and the NPS reached an impasse by the fall of 2003. Deciding that submitting additional proposed renovation plans to the NPS would be futile, Blackman retained an attorney. In a letter dated January 13, 2004, Blackman (through his attorney) stated that he would "commence the Rehabilitation at a time of his choosing, without further notice to [the NPS], in accordance with

2

the attached elevations." J.A. 25. The NPS responded that Blackman would be violating the historic easement if he proceeded with his renovation plans without NPS approval. Subsequently, Blackman removed the front porch from the home.

On June 14, 2004, after the porch was removed, the NPS sought declaratory and injunctive relief in the district court. Of interest to both parties was the siding on the manor house, which the Government considered part of the historic value of the property and therefore protected by the easement. Two days later, the district court granted a temporary restraining order prohibiting Blackman from undertaking any renovation work on the home, including the removal of the siding, "unless he ha[d] first obtained written approval from the [NPS]." Id. at 30.

In July 2004, Blackman requested approval to remove sections of deteriorated siding in order to prevent additional water damage and decay. The NPS denied his request. During an August 2004 injunction hearing, both parties focused their arguments on whether Blackman should be able to remove the historic siding from the home. According to the NPS, "the historic siding was the only significant construction/demolition issue" at the time of the hearing because Blackman had already removed the front porch. Appellee's Br. at 3. Blackman presented evidence from two experts who testified that removal and replacement of the siding were required to preserve the house in its present condition. One of

3

Blackman's witnesses also testified that the house was contaminated with toxic mold that threatened the health of the inhabitants.

The district court subsequently entered a preliminary injunction prohibiting Blackman from "engaging in any type of renovation" without prior NPS approval. J.A. 37. Blackman was allowed to undertake "basic maintenance and preservation of the manor house in its present state" without obtaining NPS approval. Id.

In January 2005, Blackman removed the siding from three exterior walls of the home and wrapped the exposed walls with Tyvek, a fiberglass sheathing product designed to repel water. The work was done without prior NPS approval or court permission. The Government moved for an order requiring Blackman to show cause why he should not be held in criminal contempt. The motion was granted. Based on Blackman's actions, the district court found Blackman guilty of misdemeanor contempt of court for violating the preliminary injunction and fined him $4,000.

II.

Having reviewed the parties' briefs and the applicable law, and having had the benefit of oral argument, we conclude that there was sufficient evidence to support the determination of the district court that Blackman willfully violated the clear terms of the preliminary injunction. See Richmond Black Police Officers

4

<u>Ass'n. v. City of Richmond</u>, 548 F.2d 123, 129 (4th Cir. 1977) (stating standard of review).  Accordingly, Blackman's conviction for criminal contempt is affirmed.

<u>AFFIRMED</u>